## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| POWERMAT TECHNOLOGIES, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-CV-52-RWS |
| | § | ■ |
| ANKER INNOVATIONS, LTD., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are (1) the parties' proposed Agreed Motions *in Limine* (Docket No. 202 at 30–32); (2) Plaintiff Powermat Technologies, Ltd.'s Opposed Motions *in Limine* (Docket No. 149); and (3) Defendant Anker Innovations, Ltd.'s Motions *in Limine* (Docket No. 150). These motions are fully briefed, Docket Nos. 206, 207, and the parties argued the opposed motions at the pretrial conference on January 13, 2026, Docket Nos. 211, 215. At the pretrial conference, the Court requested that the parties meet and confer regarding Powermat MIL #1 and #6 and file a notice indicating whether they could reach an agreement on these motions *in limine* no later than January 16, 2026. *See* Docket No. 215 at 39:13–40:18, 53:2–22. Accordingly, the Court will defer ruling on those motions *in limine* until after considering the parties' notice. Consistent with the parties' agreed motions *in limine* (Docket No. 202 at 30–32) and agreements at the pretrial conference (Docket Nos. 211, 215), the Court orders as follows:

### AGREED MOTIONS *IN LIMINE*

**Agreed MIL #1.**  Preclude references to discovery disputes or alleged litigation misconduct.

**GRANTED**.

**Agreed MIL #2.**     Preclude references, suggestions, or argument disparaging Israeli or Chinese companies, people, or products due to nationality or ethnicity, and preclude evidence or argument regarding choice to testify in native language.

**GRANTED**.

**Agreed MIL #3.**     Preclude evidence or argument regarding dropped claims of infringement and invalidity.

**GRANTED**.

**Agreed MIL #4.**     Preclude evidence or argument relating to any pretrial motion practice, and the Court's ruling on any motions (excluding the actual construction adopted in the Court's Claim Construction Opinion (Dkt. 76)), or the fact that any party has attempted to exclude evidence on a particular matter (including the parties' *Daubert* motions).

**GRANTED**.

**Agreed MIL #5.**     Preclude evidence, testimony or argument disparaging or bolstering the U.S. Patent Office, its examiners, or the process for prosecuting patent applications or granting patents in the United States. This does not preclude factual evidence as to the operations of the USPTO.

**GRANTED**.

**Agreed MIL #6.**     Preclude evidence or argument referring to any other person or entity in disparaging ways, such as a "patent troll," "pirate," "bounty hunter," "bandit," "playing the lawsuit lottery," "shell company," "shakedown artist," "patent assertion entity," or any such similar terms. Use of the term "non-practicing entity" is permitted.

**GRANTED**.

**Agreed MIL #7.**     Preclude evidence or argument regarding claim construction positions or any part of the Court's Claim Construction Opinion (Dkt. 76), other than the actual positions adopted by the Court.

**GRANTED**.

**Agreed MIL #8.**     Preclude evidence or argument suggesting that the Eastern District of Texas is an improper or inconvenient venue in which to try this case.

**GRANTED**.

**Agreed MIL #9.** The parties shall be precluded from introducing evidence, testimony, or argument referring to any other person or entity as "greedy," "corrupt," "evil," or "dishonest," or using any other pejorative term. The parties shall also be precluded from introducing evidence, testimony, or argument that characterizes any other person or entity's actions as "stealing," "copying," "misappropriating," "pirating," "trespassing," or any similar terms.

**GRANTED**.

**Agreed MIL #10.** The parties shall be precluded from introducing evidence, testimony, or argument regarding funding of the litigation or regarding any comment on attorney-fee compensation including amounts or structure.

**GRANTED**.

**Agreed MIL #11.** The parties shall be precluded from introducing evidence, testimony, or argument regarding the size of the parties' law firms or the number of attorneys representing the parties.

**GRANTED**.

**Agreed MIL #12.** The parties shall be precluded from introducing evidence, testimony, or argument regarding the fact that testimony or opinions offered by any expert may have been criticized, excluded, or found to be unreliable in any other forum.

**GRANTED**.

**Agreed MIL #13.** The parties shall be precluded from introducing evidence, testimony, or argument referring to the role or presence in the courtroom of jury consultants or shadow jurors, or the use of focus groups or mock proceedings to assist with trial preparation, jury selection, or trial.

**GRANTED**.

**Agreed MIL #14.** Preclude evidence or argument suggesting that the other party had an affirmative duty to seek opinion of counsel, and/or any inference that may be drawn as to what the contents of such an opinion would have been.

**GRANTED**.

**Agreed MIL #15.** Preclude evidence or argument suggesting use of vendors or third parties is improper.

**GRANTED**.

**Agreed MIL #16.** Preclude evidence or argument related to customer reviews of Anker or Powermat products, including any customer reviews disparaging Anker or Powermat products.

**GRANTED**.

**Agreed MIL #17.** Preclude evidence or argument regarding the presence or absence of any party's corporate representative, employee, or other witness, including any evidence, testimony, or argument suggesting that the opposing party failed to call any witness. Neither party shall "try the empty chair."

**GRANTED**.

**Agreed MIL #18.** Preclude evidence or argument regarding witness compensation for expert witnesses or expert witnesses' prior work with Mayer Brown or Fish & Richardson.

**GRANTED**.

**Agreed MIL #19.** Preclude evidence or argument suggesting a derogatory impact or basis for any corporate representative leaving the company.

**GRANTED**.

**Agreed MIL #20.** No expert witness may testify to expert opinions outside the established parameters of her/his expert report(s) and depositions, and counsel shall not raise such an objection for strategic or other non-meritorious purposes.

**GRANTED**.

## POWERMAT'S MOTIONS *IN LIMINE*

**Powermat MIL #1.** Preclude any reference to IPRs filed against the Patents-in-Suit or IPRs filed against any patents owned by Powermat, including any decisions to institute or not institute IPR proceedings, as well and any reasons provided by the PTAB for such denials or institutions.

**CARRIED**. During the pretrial conference, the Court ordered the parties to further meet and confer regarding Powermat MIL #1 and #6 and file a notice on the docket indicating whether they could reach an agreement no later than January 16, 2026. Docket No. 215 at 39:13–40:18, 53:2–22. The Court will decide these motions *in limine*, to the extent necessary, after considering the parties' notice.

**Powermat MIL #2.** Preclude evidence or argument suggesting that a verdict in one party's favor would impact the cost of goods or services or would have other commercial impacts.

**GRANTED**. Anker withdrew its opposition to Powermat MIL #2. Docket No. 215 at 39:13–40:18, 54:21–23.

**Powermat MIL #3.** The parties shall be precluded from introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings.

**WITHDRAWN** by Powermat. *See* Docket No. 215 at 39:13–40:18, 54:21–23.

**Powermat MIL #4.** Preclude evidence, testimony, or argument regarding whether other entities have rejected Powermat's licensing offers and/or entities that do not have licenses with Powermat (*e.g.*, Apple, Belkin).

**WITHDRAWN** by Powermat. *See* Docket No. 215 at 39:13–40:18, 54:21–23.

**Powermat MIL #5.** Preclude evidence, testimony, or argument regarding Royalty Stacking/Holdup (subject of *Daubert* Motion (Dkt. No. 90)).

**DENIED-AS-MOOT** in light of the Court's decision declining to exclude the royalty stacking opinions of Anker's damages expert, Philip Kline. Docket No. 191 at 29–32.

**Powermat MIL #6.** Preclude evidence, testimony, or argument regarding the invalidity of any of the '696, '204, and '461 Patents.

**CARRIED**. *See supra* Powermat MIL #1.

### ANKER'S MOTIONS *IN LIMINE*

**Anker MIL #1.** Preclude evidence or argument regarding any orders, final judgments, or jury verdicts from other lawsuits involving Powermat or Anker.

**GRANTED**. Powermat argues that this motion *in limine* excludes relevant evidence that would not cause unfair prejudice to Anker if admitted. Docket No. 207 at 1–2. In particular, Powermat's damages expert, Philip Kline, rendered opinions about agreed judgments that resulted in Powermat licensing some of the asserted patents to certain third-party defendants.[1] *Id.* Powermat contends that Mr. Kline must be permitted to testify about the agreed judgments to "fully provide

---

[1] Powermat also opposed Anker MIL #1 on the grounds that Powermat should be able to introduce evidence of a jury verdict in *Fundamental Innovation Systems International LLC v. Anker Innovations Ltd., et al.* Redacted Version of Sealed Jury Verdict, No. 1:21-cv-00339-RGA (D. Del. Mar. 7, 2025), ECF No. 340. At the hearing, Powermat represented that it would no longer seek to introduce such evidence, Docket No. 215 at 59:14–60:5, so the Court need not address such arguments.

the background on how these resultant license agreements were reached." *Id.* at 2. Anker counters that the agreed judgments include "broad and conclusory statements" that "suggest a court has found [Powermat's] patents infringed by products practicing the Qi standard, when that is not the case" because the judgments were only stipulations entered by a court. Docket No. 150 at 2.

Courts in this District regularly do not permit parties to proffer evidence referencing other lawsuits. *See, e.g.*, *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00980-JRG, 2018 WL 10638138, at *6 (E.D. Tex. Apr. 26, 2018) (excluding evidence and testimony "related to any other litigations involving the FedEx Defendants" but permitting evidence or testimony of "any license that is addressed in [the plaintiff's] expert reports, whether or not it was derived from litigation"); *MobileMedia Ideas, LLC v. HTC Corp.*, No. 2:10-CV-112-JRG, 2013 WL 12158524, at *2 (E.D. Tex. Apr. 24, 2013) (precluding "[r]eference to settlements or verdicts in other lawsuits"). Powermat presents no compelling reasons to deviate from this standard practice. To the contrary, under Federal Rule of Civil Procedure 403 balancing, such evidence should not be admitted given that its probative value is substantially outweighed by the risk of unfair prejudice or misleading the jury. For example, the agreed judgments, if admitted, would risk unfairly suggesting to the jury that any products that practice the Qi standard necessarily infringe Powermat's patents. *See, e.g.*, Docket No. 150 at 2 (explaining that the agreed judgment designated as Powermat's trial exhibit PX 268 provides that "[p]roducts which practice the Qi Standard or are Qi Certified infringe one or more claims of each of the Patents-in-Suit" (quoting Docket No. 150-1 at ¶¶ 6–7, 13)).

**Anker MIL #2.** Preclude Powermat employee Dr. Ozluturk from presenting undisclosed expert opinions.

**DENIED**. The parties dispute the scope of Anker MIL #2. Anker argues that certain statements attributed to Dr. Ozluturk, which are referenced in the report of Powermat's damages expert, Mr. John Jarosz, constitute impermissible expert testimony. Docket No. 150 at 6. Notably,

Mr. Jarosz relies on statements from Dr. Ozluturk (1) that the asserted patents are among the 15 percent most valuable in Powermat's patent portfolio; and (2) that if the asserted patents were adjudged to be valid enforceable, and infringed, then a multiplier of two would apply to the licensing rate. *Id.* Powermat responds that such statements are admissible as proper lay witness testimony. Docket No. 207 at 5–6.

Under Federal Rule of Evidence 701, a lay witness may testify "in the form of an opinion" so long as the opinion is

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Under this formula, "the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (quoting *Miss. Chem. Corp. v. Dresser–Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002)). Thus, Rule 701 "does not preclude testimony by business owners or officers on matters that relate to their business affairs." *Id.* Rather, "an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert." *Id.*

The Court agrees with Powermat that Dr. Ozluturk's statements are not impermissible expert opinions. Applying the Rule 701 rubric, Dr. Ozluturk has "personalized knowledge of the facts underlying his opinion." *Texas A&M Rsch. Found.*, 338 F.3d at 403; Docket No. 215 at 69:5–15. Namely, Dr. Ozluturk, as Powermat's Head of Licensing, has knowledge of Powermat's licensing practices and negotiations. Docket No. 215 at 69:5–15. Further, his opinions on the

relative valuation of the asserted patents in Powermat's patent portfolio and the proposed multiplier are "rational[ly] connect[ed]" to his knowledge of those licensing practices. *Texas A&M Rsch. Found.*, 338 F.3d at 403.

*Aunt Sally's Praline Shop, Inc. v. United Fire & Casualty Co.* is instructive. 418 F. App'x 327, 331 (5th Cir. 2011). In that case, the Fifth Circuit affirmed a district court's admission of a CEO's testimony regarding the plaintiff company's potential net income had Hurricane Katrina not struck. *Id.* at 329, 331. In doing so, the Fifth Circuit explained that the CEO "had personal knowledge of [the company's] business prospects and could properly testify as to [the company's] potential net income." *Id.* at 331. Notably, the fact that the CEO's testimony was "based on new investments in equipment rather than purely historical figures" did not alter the admissibility of his testimony. *Id.* The Fifth Circuit observed that Rule 701 does not restrict the "practice of allowing business owners or officers to testify based on particularized knowledge derived from their position." *Id.* Likewise, Dr. Ozluturk's opinions on the relative valuation of the asserted patents and proposed multiplier are based on his personal knowledge of Powermat's licensing practices and negotiations. Such testimony is permitted under Rule 701.

The authorities Anker raises are inapposite. Anker argues that Dr. Ozluturk's challenged statements are improper expert testimony because they involve hypothesis and speculation. Docket No. 215 at 66:11–67:12. In doing so, Anker refers to the case *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139 (D. Del. 2013), to support this proposition. However, even accepting Anker's reading of *AVM* at face value, Anker's out-of-circuit, non-binding authority cannot upset the Fifth Circuit's binding precedent, which permits employees and officers of a business to testify regarding estimates that are based on their personalized knowledge of their positions. *See, e.g., Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 169 (5th Cir. 2010) (affirming district

court's decision to permit CFO to testify regarding lost profits); *see also Texas A&M Rsch. Found.*, 338 F.3d at 403.

In addition, Anker argues that Dr. Ozluturk's opinions must be excluded because they require "specialized knowledge" and could "not be reached by an ordinary person." Docket No. 150 at 7 (quoting *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996)). However, Dr. Ozluturk's relative valuation of the asserted patents and his factor of two multiplier opinion bear a nexus to his personal experience overseeing Powermat's licensing practices and negotiations. The fact that his conclusions are based on his experiences in that position do not "change the character of his testimony." *Cf. United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010) (explaining that the fact that a witness "apparently analyzed a great deal of data" related to his position as chief risk officer did not render his conclusions based on that information to be improper lay opinion testimony). Moreover, "the fact that [Dr. Ozluturk] drew particular opinions and projection for the purposes of this case does not make him an 'expert' within the meaning of Federal Rule of Evidence 702." *Id.*

Anker argues that Dr. Ozluturk lacks personal knowledge of the relative valuation of the asserted patents because he testified at his deposition that "[o]utside of the litigation and what's privileged, ***Powermat itself has not taken on the task of valuing the asserted patents*** or the value analysis or studies of the asserted patents." Docket No. 150 at 5 (emphasis in original) (quoting Docket No. 150-5 at 262:13–263:5). In addition, Anker notes that Dr. Ozluturk admitted that he also had not "made any valuation analysis on individual patents." *Id.* (quoting Docket No. 150-5 at 183:23–184:7). Although Dr. Ozluturk's admissions may diminish his credibility to testify about a relative valuation of the asserted patents, they do not establish that he lacks personal knowledge sufficient to support his relative valuation testimony. Dr. Ozluturk admitted that Powermat had not

undertaken to value the asserted patents or to conduct value analyses or studies, but that admission is not wholly inconsistent with Dr. Ozluturk having an opinion on the value of the asserted patents relative to the portfolio based on his general knowledge of Powermat's licensing practices. Any challenge to the credibility of Dr. Ozluturk's testimony can be addressed on cross-examination. However, to the extent that Anker was prejudiced by Powermat's failure to adequately disclose this topic of Dr. Ozluturk's testimony during his deposition, Anker should be permitted to conduct a brief follow-up deposition of Dr. Ozluturk to take place no later than **January 26, 2026**. That deposition should be limited to a discussion of patent valuation. If Dr. Ozluturk's testimony at the deposition supports the exclusion of any of Dr. Ozluturk's statements, Anker may of course renew its objections to his testimony at trial.

**Anker MIL #3.**     The parties shall be precluded from introducing evidence, testimony, or argument concerning any party's overall financial size, wealth, or executive compensation.

**GRANTED**. Powermat agrees that it will not generally produce evidence, testimony, or argument concerning the parties' overall financial size, wealth, or executive compensation. Docket No. 207 at 7. Powermat only opposes this motion *in limine* to the extent that it would preclude Powermat from offering evidence regarding (1) sales of the accused products, (2) "Powermat's own investments in the implicated technology," or (3) the gross revenue in royalties that Powermat has received from licensees. *Id.* at 7–8. At the hearing, Anker indicated that, with the exception of the total revenues of the products sold, it agreed that Powermat may present evidence regarding each of the topics that Powermat identified in its opposition. Docket No. 215 at 75:24–76:14. Thus, the Court will start and end its analysis with the total revenues.

The Court agrees with Anker that producing evidence of total revenues of the accused products would generally present a risk of unfair prejudice. Powermat's arguments to the contrary are unconvincing. According to Powermat, such evidence is probative of the eleventh *Georgia-*

*Pacific* factor, *i.e.*, "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." Docket No. 207 at 7. Further, Powermat contends that such evidence is relevant to showing the commercial success of the patented invention, which is a secondary consideration of non-obviousness. *Id.* At the pretrial conference, Powermat also clarified that it seeks to present such evidence to show how Anker is comparable to a different entity that entered into a licensing agreement with Powermat. Docket No. 215 at 77:16–78:14.

Considering the purposes for which Powermat seeks to raise this evidence, such evidence should generally be excluded under Rule 403 balancing given that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice and the likelihood that such sales figures would unduly skew the jury's verdict. *Cf. Inventio AG v. Thyssenkrupp Elevator Corp.*, No. CV 08-874-RGA, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014) ("Therefore the Court finds that the overall revenues are irrelevant to the expert's conclusion and is therefore inadmissible for the purposes of this trial. Alternatively, and consistent with Federal Circuit decisions in various cases, the evidence would be excluded under Rule 403 as the prejudice to ThyssenKrupp substantially outweighs its probative value."); *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1349 (Fed. Cir. 2023) ("We expect that, on remand, there will be no recurrence of comparable references, to sports-team prices or other facts about size of a proposed award alone (one way or the other), not focused on answering the question of the value of the specific technology at issue.").

Although the sales and revenue amounts are probative of the issues identified by Powermat, there are other measures that can demonstrate the extent to which the infringer has made use of the invention, the invention's commercial success, or the comparability between Anker and other licensees. For example, Powermat can introduce evidence of the number of the accused products

■

sold and other non-monetary metrics that have a lesser risk of unduly skewing the jury's verdict including the number of employees working at a company, a company's market share, and the ratio of overall revenues between different companies. In addition, Powermat may seek the Court's permission to raise particular evidence, testimony, or argument covered by this motion *in limine* on a case-by-case basis.

**Anker MIL #4.** Preclude Powermat from introducing evidence or argument about Anker witnesses not reading patents or forming opinions regarding the patents and/or infringement of the patents.

**DENIED**. The Court will take up these disputes on a case-by-case basis during trial.

## CONCLUSION

Accordingly, it is

**ORDERED** that the parties, their witnesses, and counsel shall not raise, discuss, or argue the subject of any granted motion *in limine* before the venire panel or the jury without first approaching the bench and obtaining leave of the Court. It is further

**ORDERED** that, no later than **January 26, 2026**, Powermat shall make available Dr. Fatih Ozluturk for a brief follow-up deposition (no longer than three hours), which will be limited to a discussion of patent valuation. It is further

**ORDERED** that, within **seven (7) days** of this Order's entry, the parties **SHALL** jointly move to file a redacted version of this Order. The parties' joint motion **SHALL** provide proposed redactions, describe the confidential information in those proposed redactions, and provide good cause for each redaction. Or, if no redactions are necessary, the parties **SHALL** jointly file an unsealed and unredacted version of the Order with a cover page stating no redactions are needed.

**So ORDERED and SIGNED this 18th day of January, 2026.**

Robert W. Schroeder III
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE